UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JOHN ELSWICK,

      Plaintiff,

v.                           Civil Action No. 2:10-01336

DANIELS ELECTRIC INC.,

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is defendant's motion to dismiss, filed
November 29, 2010.

I.

      Plaintiff John Elswick filed this action in the Circuit
Court of Kanawha County, West Virginia, on October 27, 2010.  The
relevant facts, as set forth in the complaint and incorporated
documents, are as follows.  Elswick, who is a citizen and
resident of West Virginia, belongs to a collective bargaining
unit represented by the United Mine Workers of America ("UMWA").
(Compl. ¶ 4).  Since August 2008, Elswick has worked for
defendant Daniels Electric Inc., a West Virginia corporation.
(<u>Id.</u> ¶ 5).  Defendant is a signatory to a collective bargaining
agreement (the "CBA") between UMWA and the Association of
Bituminous Contractors, a multi-employer association of

contractors that specialize in coal mine construction and related projects.  (Id. ¶ 5).  The CBA therefore governs the terms of Elswick's employment with defendant.

Under the CBA, an employee's duties and wage are determined in large part by his job classification.  (CBA at 4, 10).  Specifically, in an article entitled "Classification," the CBA provides that, within sixty days of his employment, a new employee "shall be classified in a regular, recognized occupation."  (CBA at 10).  Once so classified, the employee "shall normally be assigned to duties customarily involved with his regular classified job."  (Id.).  Moreover, as set forth in Appendix A to the CBA, the employee's job classification determines his standard hourly rate, which in turn is the basis for calculating his rate of pay for overtime and weekend hours. (Id. at 4-5).

Although unclear from the complaint, the parties suggest that Elswick was classified as a "laborer" when he began his employment with defendant.  (Def.'s Supp. Mem. at 3; Pl.'s Resp. at 3).  Nevertheless, Elswick alleges that he performed the duties of a "lineman" from the outset of his employment.  (Compl. ¶ 5).  Pursuant to the CBA, the hourly wage for a lineman in 2008 was $21.18, increasing to $21.82 in 2009 and $22.47 in 2010.

2

(Id.; CBA at 20).[1]  Notwithstanding the CBA's prescribed rates, Elswick alleges that he was paid $15.00 per hour from the time he began his employment in August 2008 to the spring of 2009; $19.43 per hour from the spring of 2009 to April 2010; $20.01 per hour from April 2010 to August 2010; and $22.47 per hour thereafter. (Compl. ¶ 6-7).  Elswick thus asserts that the standard hourly wage he was paid between August 2008 and August 2010 should have been higher, as should the wages he was paid for working overtime, weekends, and holidays.  (Id. ¶ 8).

        Based on the alleged discrepancy in pay, Elswick initiated this action in the Circuit Court of Kanawha County on October 27, 2010, asserting two counts in his complaint.  Count I, brought under the West Virginia Wage Payment Collection Act (the "State Claim"), alleges "a wage claim against this defendant for the difference between what he was paid, and that which he actually earned, for his 'straight time' and overtime pay."  (Id. ¶ 9).  In Count II, Elswick raises an identical claim under what he labels the "Federal Wage and Hour Act" (the "Federal Claim").

---

[1] Although Elswick did not attach the CBA to his complaint, the court may consider the CBA at this stage of the case inasmuch as (1) it was attached to defendant's motion to dismiss and was integral to and relied upon in Elswick's complaint, and (2) Elswick does not dispute its authenticity.  See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

3

(<u>Id.</u> ¶ 10).  He seeks compensatory and liquidated damages, interest, costs, and attorney fees.  (<u>Id.</u> ¶¶ 9-10).

On November 29, 2010, defendant removed, citing Elswick's Federal Claim as grounds for federal question jurisdiction.  (Notice of Removal at 2).  That same day, defendant moved to dismiss Elswick's complaint for failure to state a claim upon which relief can be granted.

## II.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), <u>overruled on other grounds</u>, <u>Twombly</u>, 550 U.S. at 563); <u>see also</u> <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007).

4

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'"  Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

**A.   The State Claim**

**1.   Preemption**

In his State Claim, Elswick seeks collection of wages

5

that he alleges were wrongly withheld by defendant, in
contravention of the West Virginia Wage Payment Collection Act,
W. Va. Code § 21-5-12.  Defendant, in its motion to dismiss,
contends that resolution of the State Claim requires an
interpretation of the CBA.  As a result, defendant maintains that
the State Claim is preempted by § 301 of the Labor Management
Relations Act ("LMRA").

          Section 301 of the LMRA expresses a federal policy,
mandated by Congress, that federal law be applied in addressing
disputes arising out of labor contracts.  Allis-Chalmers Corp. v.
Lueck, 471 U.S. 202, 209 (1985).[2]  In furtherance of this federal
policy, "when resolution of a state-law claim is substantially
dependent upon analysis of the terms of an agreement made between
the parties in a labor contract," the claim is preempted by
federal law.  Id. at 220.  Although the preemptive force of § 301
"is so powerful as to displace entirely any state cause of action
for violation of contracts between an employer and a labor
organization," Franchise Tax Bd. v. Constr. Laborers Vacation

---

          [2] Section 301 provides in pertinent part that "[s]uits for
violation of contracts between an employer and a labor
organization representing employees . . . may be brought in any
district court of the United States having jurisdiction of the
parties."  29 U.S.C. § 185(a).  Based on its official United
States Code citation, preemption under this statute is also
referred to as § 185 preemption.

_Trust_, 463 U.S. 1, 23 (1983), "the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require [preemption]," _Livadas v._ _Bradshaw_, 512 U.S. 107, 124 (1994).  Only if resolution of the cause of action requires interpretation of – as opposed to mere reference to – a collective bargaining agreement will the claim be preempted under § 301.  _Allis-Chalmers Corp._, 471 U.S. at 218.

In response to defendant's motion to dismiss, Elswick acknowledges that his "wage claims will require the parties to refer to the [CBA]" but contends that his State Claim does not require an interpretation of the agreement.  (Pl.'s Resp. at 3).  Instead, according to Elswick, his "wage claims simply reference the hourly rate of pay set forth in the pay schedules" of the CBA.  (_Id._).  In other words, according to Elswick, a fact finder need only determine whether he was performing the duties of a lineman and, if so, reference the CBA in determining the wage he would have received had he been properly classified.

Elswick cites several cases in support of this contention, but relies primarily on the decision of the Supreme Court of Appeals of West Virginia in _Ash v. Ravens Metal_ _Products, Inc._, 190 W. Va. 90, 437 S.E.2d 254 (1993).  _Ash_ involved a claim under the West Virginia Wage Payment and

7

Collection Act by a group of employees against their former
employer, alleging that they had not received vacation pay earned
before they were discharged.  Id. at 256.  The employer sought
dismissal on the basis that the employees' claim was preempted by
§ 301 of the LMRA.  Id. at 259.  The Supreme Court of Appeals
disagreed, observing that no interpretation of the parties'
collective bargaining agreement was necessary to resolve the
dispute.  Id. at 260.  The court acknowledged that the employees'
right to vacation pay was derived from the bargaining agreement,
but observed that the agreement straightforwardly provided that
an employee, upon working a certain number of hours, was entitled
to vacation pay.  Id.  Inasmuch as interpretation of this
provision was "not an issue," the court concluded that the
employees' wage claim was not preempted.  Id.

        As defendant correctly points out, however, Elswick's
State Claim involves more than mere reference to the CBA,
rendering this case distinguishable from Ash.  In determining
whether Elswick is entitled to relief, a fact finder would have
to consult and interpret multiple provisions of the CBA.  To
begin, the fact finder would have to determine whether Elswick
was improperly classified as a laborer instead of a lineman.
Such a determination requires more than simply examining the job

duties he performed as an employee of defendant.  Article 18 of
the CBA makes clear that an employee, while "normally assigned to
duties customarily involved with his regular classified job," may
at times be temporarily assigned "to other jobs out of the
employee's classification."  (CBA at 10).  As a result, to
determine whether Elswick was misclassified, the fact finder
would need to determine what duties are "customarily involved"
with the job classifications in question; whether Elswick was
"normally assigned" the duties of one classification as opposed
to another; and whether his work as a lineman was but a
"temporary assignment."  Each of these determinations is
dependent on a proper interpretation of Article 18.

Assuming the fact finder determined that Elswick had
been misclassified, it would then have to turn to Article 5 of
the CBA, entitled "Wages and Hours," to assess his damages.
Specifically, the fact finder would be required to interpret the
CBA's definitions of "basic work day," "premium work," and
"overtime."  (CBA at 4-5).  Only after interpreting each of these
terms could the fact finder properly calculate the wages Elswick
would have been paid had he been properly classified as a
lineman.

In short, unlike the employees in Ash, whether Elswick

9

was entitled to the relief he seeks can be determined only by
interpreting the CBA.  The basis of his State Claim is that
defendant contravened the CBA by paying him less than he had
earned.  Whether he is correct involves an interpretation of that
agreement, and such an interpretation can be made only in a
proceeding under § 301 of the LMRA.  See Wheeler v. Graco
Trucking Corp., 985 F.2d 108, 113 (3d Cir. 1993) (holding that
plaintiff's state-law claim for wages allegedly due under
collective bargaining agreement was preempted inasmuch as the
claim was "based squarely on the terms of the . . . agreement");
Nat'l Metalcrafters, Div. of Keystone v. McNeil, 784 F.2d 817,
821 (7th Cir. 1986) (concluding that employee's state wage claim
for vacation benefits due under collective bargaining agreement
was preempted).  Accordingly, the court concludes that § 301
preempts the State Claim.

2.   Exhaustion

        Having concluded that the State Claim is preempted, the
court must next determine whether dismissal of that claim is
appropriate.  A state law claim that is preempted by the LMRA may
yet survive if it states a claim under the federal statute.  See
Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987)
(observing that, once preempted, "any claim purportedly based on

10

[a] . . . state law is considered, from its inception, a federal claim"); Allis-Chalmers Corp., 471 U.S. at 220 ("[The preempted] claim must either be treated as a § 301 claim, . . . or dismissed as pre-empted by federal labor-contract law.").  Defendant contends that dismissal is appropriate inasmuch as Elswick has failed to exhaust his administrative remedies under the CBA.

        Subject to exceptions not relevant here, the general rule is that "[a]n employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301." Clayton v. Int'l Union, 451 U.S. 679, 681 (1981).  The CBA governing Elswick's employment with defendant includes a four-step grievance procedure for resolving disputes between employer and employee, concluding with binding arbitration.  (CBA at 16-17).  Indeed, Article 5 of the CBA, which governs wages, specifically provides that

    [w]here an employee believes that the regular duties
    which he is required to perform are appropriate to a
    job title and classification other than those which
    have been assigned to him, he may file and process a
    grievance under Article 21 (Settlement of Disputes) to
    be classified under the proper job title.

(Id. at 5).

11

It is undisputed that Elswick did not exhaust his remedies under the CBA before bringing his State Claim against defendant.  (Pl.'s Resp. at 1 ("Plaintiff has never filed a grievance regarding the wage claim he has asserted in this action under the West Virginia Wage Payment and Collection Act.")). Accordingly, the court concludes that Elswick inexcusably failed to exhaust his remedies, rendering dismissal of the State Claim appropriate.

B.   The Federal Claim

In his Federal Claim, Elswick "asserts a wage claim against this defendant for the difference between what was paid, and that which he actually earned, for his 'straight time' and overtime pay."  (Compl. ¶ 10).  As mentioned, Elswick cites the "Federal Wage and Hour Act" as the statutory source for the Federal Claim.  (Id.).  Inasmuch as there is no such federal statute, defendant presumes in its motion to dismiss that Elswick intended to cite the Fair Labor Standards Act ("FLSA"), which requires that an employer, among other things, compensate an employee working more than forty hours a week "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  In his response to the motion

12

to dismiss, Elswick did not object to defendant's characterization of the Federal Claim.  Accordingly, the court presumes that the statutory source for the Federal Claim is the FLSA.[3]

Elswick acknowledges that defendant paid him one and one-half times his normal hourly rate for all hours worked in excess of the forty hour work week.  (Compl. ¶ 8).  He claims, however, that his "regular rate," for purposes of the FLSA, was the hourly rate he was entitled to as a lineman under the CBA, and not the lower rate that he was actually paid.  Consequently, Elswick appears to contend that the computation of his overtime wages on the basis of one and one-half times his actual wages failed to meet the requirement of the FLSA.

In its motion to dismiss, defendant asserts that Elswick's Federal Claim is, in essence, "a breach of labor contract claim under the guise of . . . federal wage law." (Def.'s Supp. Mem. at 3).  Stated differently, according to defendant, the Federal Claim is actually a claim under § 301 of

_____

[3] Indeed, the court is able to identify only one other possible source for Elswick's Federal Claim, namely, § 301 of the LMRA.  As discussed, however, any claim under § 301 is premature, inasmuch as Elswick has failed to exhaust the CBA's grievance procedures.

the LMRA, inasmuch as it is dependent on Elswick's unproven
contention that he was entitled to the lineman's rate of pay
under the CBA.  Defendant contends that the interpretation of the
CBA can be made only in a § 301 action and that a court faced
with an FLSA claim is limited to examining overtime wages on the
basis of the rate actually paid.[4]

        Our circuit court of appeals has yet to address the
issue raised by defendant, namely, whether an FLSA claim that
rests on an interpretation of the underlying collective
bargaining agreement must be resolved pursuant to the procedures
contemplated under the LMRA.  The court notes, however, that at
least two circuits have confronted the issue, concluding that
FLSA claims such as Elswick's are subject to the procedural
requirements governing an LMRA claim.

        First, in <u>Vadino v. A. Valey Engineers</u>, the Third
Circuit examined at length both the LMRA and the FLSA, concluding
that a claim brought under the latter must meet the procedural
requirements of the former if the claim is dependent on an
interpretation of a collective bargaining agreement.  903 F.2d

---

    [4] Elswick did not respond to this aspect of defendant's
motion to dismiss.  In fact, Elswick failed even to mention the
Federal Claim in his response to defendant's motion.

14

253 (3d Cir. 1990).  Vadino involved an employee's two-count complaint brought against the employee's former employer.  Id. at 255.  Specifically, the employee alleged that the employer had failed to pay him as a journeyman as required under the collective bargaining agreement, in contravention of § 301 of the LMRA.  Id. at 257.  Like Elswick, the employee also asserted a claim under the FLSA, alleging that his overtime rate should have been one and one-half times the rate that he was entitled to as a journeyman.  Id.

In disposing of the dispute, the Third Circuit first ruled that the LMRA claim was barred by the governing statute of limitations.  Id. at 264.  As for the FLSA claim, the court began its analysis by contrasting the two statutes:  "The LMRA, on one hand, governs the relationships between employers and unions by encouraging the negotiation of terms and conditions of employment through the collective-bargaining process," while the "FLSA, on the other hand, is reflective of a different genre of statute, one which guarantees covered employees specific substantive rights."  Id. (internal quotation marks and alterations omitted). Emphasizing that "the FLSA contains no language suggesting that an action filed thereunder would be an appropriate vehicle for the interpretation of a disputed provision of the collective

15

bargaining agreement," the court determined that the "enforcement
provision of the FLSA is limited to employee suits seeking
enforcement of their rights under the statute."  Id. at 265.  The
court concluded that,

> in the event of a dispute as to the correct wage rate
> under a collective bargaining agreement and a
> consequential claim under the overtime provision of the
> FLSA, the procedure we envision is to decide the
> contract interpretation issue through the grievance
> procedure to arbitration.  If exhaustion can be
> excused, then the employee may file a section 301 claim
> . . . .  Concurrent with that, the employee may bring a
> FLSA claim, but the FLSA overtime claim would be
> dependent upon the resolution in the section 301 claim
> of the contract interpretation issue.

Id. at 266.  Inasmuch as the employee's § 301 claim was time
barred, he could not "seek to establish under [the FLSA] that he
was entitled to the journeyman's rate."  Id.

         The Sixth Circuit reached a similar conclusion in
Martin v. Lake County Sewer Co., 269 F.3d 673 (6th Cir. 2001).
There, a discharged employee sued his former employer and his
bargaining representative, asserting a § 301 claim against both
defendants, as well as an FLSA claim against the employer.  Id.
at 678-79.  After concluding that the employee's § 301 claim was
barred by the statute of limitations, the court determined that
the FLSA claim for unpaid wages was likewise barred by the two-
year statute of limitations governing LMRA claims.  Id. at 679.

16

Specifically, the court emphasized that the FLSA claim was no different than the § 301 claim; both, according to the court, relied on an interpretation of the terms of the underlying collective bargaining agreement.  Id. 679.  The Sixth Circuit cited Vadino, noting that "this holding appears to us to be a reasonable accommodation of both [the LMRA and the FLSA] where the analysis of a wage claim requires an interpretation of the underlying [bargaining agreement]."  Id.  Accordingly, the court concluded that the employee's FLSA claim was also governed by the statute of limitations that applied to his § 301 cause of action. Id.

        The court finds the reasoning of Vadino and Martin persuasive.  Elswick's Federal Claim depends on an interpretation of the CBA; he is entitled to additional overtime pay only if a fact finder determines that defendant improperly classified him as a laborer rather than a lineman and paid him overtime wages based on the laborer's rate.  Inasmuch as an interpretation of a collective bargaining agreement can be made only in an action under § 301 of the LMRA, Vadino, 903 F.2d at 264, Elswick's Federal Claim is subject to the procedural requirements of that statute, including the requirement that an employee exhaust all remedies set forth in the bargaining agreement.  As discussed,

Elswick has admittedly failed to exhaust his remedies under the CBA.  Accordingly, the court concludes that the Federal Claim is premature.

IV.

Pursuant to the foregoing, it is ORDERED as follows:

1.   That defendant's motion to dismiss be, and it hereby is, granted; and

2.   That this action be, and it hereby is, dismissed without prejudice and stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: April 15, 2011

John T. Copenhaver, Jr.
United States District Judge